Gary Michael **SHAW**, Plaintiff,

v.

**OCONEE COUNTY, GA,**
et al., Defendants.

Civ. A. No. 93–83–ATH (WDO).

United States District Court,
M.D. Georgia,
Athens Division.

Oct. 11, 1994.

Steven K. Leibel, Thaddeus R. Sobieski, David C. Ates, Atlanta, GA, for plaintiff.

Andrew Hulsey Marshall, Athens, GA, for defendants.

### ORDER

OWENS, Chief Judge.

Before the court is defendants' motion for summary judgment. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

### FACTS

On November 3, 1992, defendant Scott Berry was elected Sheriff of Oconee County, Georgia. Prior to taking office, Berry was contacted by Genaro Mitchell, a former employee of the Oconee County Sheriff's Department. Mitchell, who was seeking reinstatement to his previous position in the sheriff's department, alleged that his signature had been forged on a document in his personnel file. Berry contacted a private criminal investigator to determine the authenticity of the signature on the document. The investigator subsequently informed Berry that the signature was a forgery. On January 1, 1993, Berry assumed the office of Sheriff of Oconee County.

On January 5, 1993, Berry and Chief Deputy Gerald Guntharp met with Genaro Mitchell's former supervisor in the sheriff's department, plaintiff Gary Shaw, to discuss the alleged forgery. Berry suspected Shaw of forging Mitchell's name on the document. Shaw, however, denied forging Mitchell's name on the document and insisted that he witnessed Mitchell sign the document. At the end of the meeting, Berry informed Shaw that he would be suspended for ten days pending investigation of the forgery allegation.

On January 26, 1993, an informal grievance hearing was held to address the allegation raised by Mitchell. At the conclusion of the hearing, Berry informed Shaw of his intention to terminate Shaw's employment with the Oconee County Sheriff's Department. Subsequently, Shaw was provided written notice of termination. On April 9, 1994, a formal grievance hearing was held concerning Shaw's termination. The grievance panel upheld Berry's decision to terminate Shaw's employment.

Subsequently, plaintiff filed suit pursuant to 42 U.S.C. § 1983, against Oconee County, the Oconee County Board of Commissioners in their individual and official capacities, Sheriff Berry in his individual and official capacity, and Chief Deputy Guntharp in his individual and official capacity. In the complaint, plaintiff asserts that the actions of defendants violated his rights to procedural and substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution. In addition, plaintiff's complaint sets forth a supplemental state law claim for defamation. Subsequently, the parties stipulated to the dismissal of the Oconee County Board of Commissioners in their individual capacities.

### DISCUSSION

Defendants have filed this motion seeking summary judgment on plaintiff's procedural and substantive due process claims, on the issue of qualified immunity, and on plaintiff's state law claim for defamation. Plaintiff has responded to defendants' motion, and the motion is now before the court for decision.

#### I. Procedural Due Process

▮ Plaintiff contends that defendants have violated his procedural due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution. "A plaintiff may bring a cause of action under 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution alleging that the defendant ... has deprived the plaintiff of a constitutionally protected interest in life, liberty or property."

*Jones v. City of East Point,* 795 F.Supp. 408, 414 (N.D.Ga.1992). A person may be deprived of a protected property interest only if afforded due process of law. *Jones,* 795 F.Supp. at 414. A procedural due process analysis requires a two-part inquiry: (1) has the plaintiff been deprived of a protected property interest; and (2), if so, was due process accorded. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982); *see also Bailey v. Board of Commissioners,* 956 F.2d 1112, 1122 (11th Cir.1992); *Woodruff v. United States,* 954 F.2d 634, 641 (11th Cir.1992).

### A. Protected Property Interest

 "The existence of a legitimate claim of entitlement to a property interest ... is to be determined in accordance with state law." *Nicholson v. Gant,* 816 F.2d 591, 597 (11th Cir.1987); *see also Nolin v. Douglas County,* 903 F.2d 1546, 1553 (11th Cir.1990); *Wofford v. Glynn Brunswick Memorial Hospital,* 864 F.2d 117, 119 (11th Cir.1989). "The acquisition of a Fourteenth Amendment property interest with accompanying procedural due process requires more than a unilateral expectation; there must be a legitimate claim of entitlement." *Adams v. Bainbridge–Decatur County Hospital Authority,* 888 F.2d 1356, 1363 (11th Cir.1989); *see also Nolin,* 903 F.2d at 1553; *Wofford,* 864 F.2d at 119. In general, the existence of a property right in an aspect of public employment "is made by reference to laws, regulations, or personnel policies." *Nolin,* 903 F.2d at 1553. A plaintiff who asserts that a procedural due process violation has occurred, bears the initial burden of establishing a protected property interest. *Id.* at 1554.

 "Under Georgia law, a property interest arises whenever [a] public employee can be terminated only for cause." *Barnett v. Housing Authority of City of Atlanta,* 707 F.2d 1571, 1576 (11th Cir.1983) (citing *Brownlee v. Williams,* 233 Ga. 548, 212 S.E.2d 359 (1975)). Chapter V of the Oconee County Personnel Policies and Procedures provides that "[a] dismissal is a separation *made for definable cause,* such as inefficiency, insubordination or inability to perform the required work satisfactorily." **Oconee** Policies Chap. V, § 4 (emphasis added). Further, Chapter VI of the Oconee County Personnel Policies and Procedures states that "[a]n elected official ... may separate an employee when other reasonable steps have been exhausted in attempts to correct the unacceptable work related situation." Oconee Policies Chap. VI, § 5. These provisions clearly create an expectation on the part of an employee that the employee may only be separated from his or her employment "for cause." Accordingly, the court holds that plaintiff has met his burden of establishing the existence of a protected property interest in continued public employment.

### B. Adequacy of Process Accorded

 If a plaintiff establishes that a protected property interest exists, "the process due in abridging [that] right[ ] is governed by federal law." *Wofford,* 864 F.2d at 118; *see also Harris v. Birmingham Board of Education,* 817 F.2d 1525, 1527 (11th Cir.1987). Therefore, once a property right has been identified, the court must determine whether due process was accorded. *Nicholson,* 816 F.2d at 598. The essential elements of due process are notice and an opportunity to be heard. *Id.* However, "[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill advised personnel decisions." *Lee v. Hutson,* 810 F.2d 1030, 1032 (11th Cir.1987).

 As an initial matter, an "employee is entitled to 'some kind' of pre-termination hearing." *McKinney v. Pate,* 20 F.3d 1550, 1561 (11th Cir.1994). However, the pre-termination hearing required by due process "is not a mini-trial and 'need not definitely resolve the propriety of the discharge.....'" *McKinney,* 20 F.3d at 1561. Due process only requires that an employee receive "'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story....'" *Id.* In the case *sub judice,* plaintiff was provided both a pre-termination and post-termination hearing. Plaintiff, however, asserts that the process provided in the pre-termination hearing was constitutionally deficient. Viewing the facts in a light most

favorable to the non-movant, the record reveals that plaintiff was provided oral notice of the charges against him, was provided an explanation of the evidence against him, and was provided an opportunity to present his side of the story. The due process clause of the Fourteenth Amendment requires nothing more of a pre-termination hearing.

■■■ Further, even assuming that plaintiff's pre-termination hearing failed to satisfy the requirements of due process, plaintiff has not disputed the constitutional sufficiency of his post-termination hearing. As the Eleventh Circuit stated in *McKinney*, "a procedural due process violation is not complete 'unless and until the State fails to provide due process.'" *Id.* at 1557. That is, "the state may cure a procedural deprivation by providing a later procedural remedy; *only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.*" *Id.* Therefore, even if plaintiff did suffer a procedural "deprivation" in the form of an insufficient pre-termination hearing, he did not suffer a violation of his procedural due process rights in that the post-termination hearing provided by defendants "cured" the deprivation. Accordingly, defendants' motion for summary judgment on plaintiff's procedural due process claim is **GRANTED.**

## II. Substantive Due Process

■■■ Plaintiff contends that the actions of defendants violated his substantive due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution in that "he was terminated for pretextual reasons, and that no sufficient cause was present for his termination." (Pls.' Br. at 9.) However, in *McKinney v. Pate*, 20 F.3d 1550 (11th Cir.1994), the Eleventh Circuit Court of Appeals held that "only procedural due process claims are available to pretextually terminated employees." *McKinney*, 20 F.3d at 1560. Accordingly, in light of the decision in *McKinney*, defendants' motion for summary judgment on plaintiff's substantive due process claim is **GRANTED.**

## III. Qualified Immunity

The Eleventh Circuit Court of Appeals has adopted an objective-reasonableness test for determining whether a government official is entitled to qualified immunity. *See Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991); *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988). "The objective-reasonableness test provides qualified immunity protection to 'all but the plainly incompetent or those who knowingly violate the law.'" *Courson*, 939 F.2d at 1487. "Eligibility for this immunity is determined on an objective basis and not on the basis of the officer's subjective beliefs." *Acoff v. Abston*, 762 F.2d 1543, 1549 (11th Cir.1985).

■■■ The objective reasonableness test involves a two-step process. First, the defendant must show that "'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Courson*, 939 F.2d at 1487. If the defendant is able to meet this burden of production, the burden then shifts to the plaintiff to show that the defendant's actions violated clearly established constitutional law. *Id.* The second prong of the test is further divided into two subparts. First, the court must determine if the applicable law was clearly established at the time the action occurred. *Id.* at 1487–88. Second, if the law was clearly established, the court must determine if there is a genuine issue of material fact concerning whether defendant violated this law. *Id.* at 1488. Under this analysis, the defendant is entitled to qualified immunity if either (1) the law was not clearly established, or (2) the law was clearly established but the defendant did not violate the law. *Id.* n. 14.

### A. Scope of Discretionary Authority

■■■ A government official proves that he acted within the scope of his discretionary authority by showing "'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Id.* at 1487 (quoting *Rich*, 841 F.2d at 1564). The parties do not dispute that defendants were acting within the scope of their discretionary authority in terminating plaintiff's employment.

## B. Clearly Established Law

The court must next determine if the applicable law was clearly established at the time of the alleged violation. *Courson*, 939 F.2d at 1487–88. At the time of plaintiff's termination, *the law was clearly established* that a public employee with a property interest in continued public employment is entitled to notice of proposed termination, a pre-termination hearing, and a post-termination hearing.

As the court has found that the law was clearly established at the time of the alleged violation, the court must determine if a genuine issue of material fact exists as to whether defendants violated that law. *Id.* at 1488. In Part I of this order, the court held that defendants had not violated the procedural due process rights of plaintiff. Therefore, as no genuine issue of material fact exists for resolution by a jury, defendants' motion for summary judgment on the issue of qualified immunity is **GRANTED.**

### IV. State Law Claim

Plaintiff brought this action pursuant to 42 U.S.C. § 1983. In addition, plaintiff invoked the supplemental jurisdiction of this court to hear a state law cause of action for defamation. However, in light of the conclusions reached in Parts I, II, and III of this order, plaintiff's state law claim is no longer properly before the court and, therefore, the court **DISMISSES** it **WITHOUT PREJUDICE.**

### CONCLUSION

Defendants' motion for summary judgment on plaintiff's procedural due process claim is **GRANTED.** Defendants' motion for summary judgment on plaintiff's substantive due process claim is **GRANTED.** Defendants' motion for summary judgment on the issue of qualified immunity is **GRANTED.** Finally, plaintiff's state law claim for defamation is **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**